```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHIRLEY MOONEY,                )
                               )
          Plaintiff,            )   CIVIL ACTION NO. 05-0102
                               )
     v.                        )
                               )   Judge Cercone
JO ANNE B. BARNHART,           )   Magistrate Judge Caiazza
Commissioner of                )
Social Security,               )
                               )
          Defendant.            )
```

**REPORT AND RECOMMENDATION**

**I. Recommendation**

Acting pursuant to 42 U.S.C. § 405(g), Shirley Mooney ("Mooney" or "the claimant"), appeals from a January 13, 2005 decision of the Commissioner denying her application for disability benefits. Motions for Summary Judgment are pending. It is respectfully recommended that Mooney's motion (Doc. 9) be denied, and that the motion filed by the Commissioner (Doc. 11) be granted.

**II. Procedural Background**

On June 2, 2003, Mooney filed an application for disability benefits, alleging that she became disabled on January 31, 2002 as a result of degenerative lumbar disc disease, arthritis, and severe depression. It is uncontested that her last date of insurance was December 31, 2002. Following the initial denial of her application, Mooney requested a hearing, which took place on May 4, 2004, before an administrative law judge ("ALJ") in Pittsburgh, PA.  Mooney attended with her attorney and her

husband. She, her husband, and a vocational expert testified.

On June 18, 2004, the ALJ issued an opinion denying Mooney's application for benefits. According to the ALJ, Mooney was "not unable" to engage in substantial gainful activity at any time through her last date of insurance. Mooney's request for review was denied by the Appeals Council on January 13, 2005, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

### III. Factual Background

At the time of the administrative hearing, Mooney was a forty-eight year old high school graduate. Virtually all of her work experience was with Varney's Carpet Store.[1] She began work there as a "girl Friday," progressed to bookkeeper, and then was promoted to salesperson, manager, and buyer. In 1997, she assumed ownership of the store. In 2002, Mooney reduced her work hours from the sixty per week that she had worked in prior years to about thirty hours per week. The next year she halved her work hours again, spending approximately fifteen hours per week in the store. Mooney alleges that she was forced to abandon her business when, after the onset of her disability, she spent all of her time in the store sitting, sleeping, or crying. The business was liquidated on July 30, 2003.

---

[1] At various points in the record, this business is also identified as "Yarney's Carpet" and "Barney's Carpet." The court has adopted the name recorded in the hearing transcript.

### IV. Discussion

#### A. Issue

The sole issue before the court is whether substantial evidence in the record supports the Commissioner's finding that Mooney was not disabled between January 31, 2002, and December 31, 2002.

#### B. Standard of Review

The Social Security Act ("the Act") limits judicial review of the Commissioner's final decision regarding benefits to a determination of whether the factual findings are supported by substantial evidence, Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir 1984). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stunkard v. Secretary of Health and Human Services, 841 F. 2d 57, 59 (3d Cir. 1988)(quoting Richardson v. Perales, 402 U.S. 389, 401(1971)). It consists of "more than a scintilla of evidence, but less than a preponderance." Id.

#### C. The Commissioner's Analysis

Under the Act, each claim for disability insurance benefits turns on the application of the five step analysis articulated at

20 C.F.R. §404.1520.[2] These steps are sequential. If the question of entitlement can be resolved at the first step, there is no need for further analysis. The ALJ resolved Mooney's claim at step one.

The starting point for the ALJ's evaluation of Mooney's claim was the regulation set forth at 20 C.F.R. § 404.1572. This provision defines "substantial gainful activity" as "work activity that is both substantial and gainful." Substantial work activity "involves doing significant physical or mental activities." Section 404.1572(a) explains that "work may be substantial even if it is done on a part-time basis" or if it involves less work, less pay, or less responsibility than the claimant may have had in a prior position. Section 404.1572(b) defines "gainful work activity" as work activity done for pay or profit, or the kind of work activity usually done for pay or profit, regardless of whether a profit is realized. Other

---

[2]The familiar five steps are as follows: (1) If the claimant is performing substantial gainful work, she is not disabled; (2) If the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled; (5) Even if the claimant's impairment or impairments prevent her from performing her past work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

regulatory provisions clarify how substantial gainful work activity is to be assessed when the claimant is self-employed.

Whether a self-employed claimant has performed substantial gainful work is determined by "the value of [a claimant's] services to the business" even if that value is not reflected in immediate income. 20 C.F.R. § 404.1575(a). This value is assessed using three distinct tests. These tests, like the overall five step framework, are sequential. If Test One is inapplicable, the analysis proceeds to Test Two, and then to Test Three, if necessary.

Because Test One applies to employees who have rendered services significant to the operation of the business, and have received substantial income, Id. at subsection (a), the ALJ concluded that it was not applicable. Mooney did not receive substantial income during the period of her alleged disability. The ALJ, therefore, considered the provisions of Test Two. Under this test,

> a claimant has "engaged in substantial gainful activity if her work activity, in terms of . . . hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in the same community who are in the same or similar businesses as their means of livelihood."

Id., at subsection(b). The ALJ expressly resolved all doubt in Mooney's favor, in concluding that after the alleged onset of her disability she was not able to function at the level of an

unimpaired person within the meaning of Test Two.[3]

Next, the ALJ advanced to Test Three, which provides that a claimant has engaged in substantial gainful activity where the worth of her activity is at least equal to the amount specified in 20 C.F.R. §404.1574(b)(3). The worth of an activity is calculated with reference to its value to the business, or in terms of what an owner would pay an employee to do the same job. Applying the formula specified in the regulation, the ALJ derived a dollar value reflecting Mooney's contribution to the carpet business. His calculation was based on the following items of evidence: (1) Mooney had earned more than $50,000 as the manager of the carpet store during each of the years from 1994 through 1996; (2) Mooney testified that in 2002 she began to spend fewer hours at the store;[4] (3) Prior to the onset of her problems, she

---

[3] Perhaps misreading this portion of the ALJ's opinion, Mooney argues that the "ALJ ought to have found that [her] 'work activity' was not comparable to that of unimpaired individuals . . . ." (Pl. Br. 16). In fact, this is precisely what the ALJ did find. (R. 14)

[4] The transcript records the following exchange between the ALJ and Mooney:

> Q: So when do you think you stopped working on a productive full-time basis?
>
> A: Probably the beginning of January. I kept lessening my hours, but it was about half in January.
>
> Q: Of what year now?
>
> A: Oh, I'm sorry, of 2003. But it was less hours in 2002.
>
> Q: So you went to half-time, part-time in January '03. And then in '02 you had some reduced hours?

worked sixty hours per week. The ALJ accepted Mooney's testimony that she spent 30-35 hours per week in the store after January 2002, and further reduced her hours to 15-18 per week in calendar year 2003.(R. 13, 337).

The ALJ found it reasonable to conclude that Mooney's reduced hours in calendar year 2002 were worth at least half of the $50,000 per year that she had earned in 1994, 1995, and 1996. He drew from Mooney's testimony to calculate that she was in the store, conservatively, 130 hours in each month of 2002. This would have brought her monthly income to $780.00 per month, or $6.00 an hour, a figure which, according to the formula at 20 C.F.R. 404.1574(b)(2), qualified as substantial gainful activity under Test 3.[5] The ALJ wrote:

> [T]he value of management decisions, bookkeeping, and other duties performed by the claimant essential to the operation of her business during the calendar year 2002 would certainly exceed $6.00 per hour if she had to pay an employee to perform the duties, and . . . the value of claimant's work activity . . . would certainly exceed the level of presumed substantial gainful activity cited above.

---

A: Right.

(R. 318).

[5]Mooney does not challenge any aspect of the ALJ's reading of the relevant regulations, the formula applied to calculate her monthly income, the data that went into that calculation, or the numerical result reached. She argues instead that the ALJ should not have applied the substantial gainful activity tests at all because during her hours in the carpet store in 2002, she did nothing but sit.

(R. 15).

The ALJ found that Mooney was not entitled to disability benefits because she engaged in gainful substantial work activity through December 31, 2002, the date on which she was last insured. The ALJ recognized the possibility that Mooney was unable to perform substantial gainful activity at any point in 2003. This did not, however, change his benefit analysis because as of January 1, 2003, Mooney was no longer covered by disability insurance.

### D. Analysis

In what is effectively her only allegation of error,[6] Mooney contends that the ALJ should not have assigned any value to the hours that she spent in the carpet store in 2002. This argument lacks merit. Mooney's contention that her time was worthless is contradicted by her own testimony. When the ALJ asked Mooney when she thought that she had "stopped working on a productive full-time basis," she answered that it was in January 2003. (R. 318). Her testimony also fixed the point at which she "couldn't make it any more" and had to "just sit [in the carpet store]" as January 2003. (R. 319). Finally, when she was asked to describe what she

---

[6]Mooney also argues that the ALJ erred in considering only the first step of the five step analysis. This contention does not merit discussion. The regulations clearly establish that the five step analysis is sequential. If, at any step, a disability determination can be made, further discussion is unnecessary.

was capable of doing when she first reduced her hours by half, she stated that she was unable to perform the physical parts of the job. Id.  This suggests that there were areas in which she remained capable. For example, Mooney told the ALJ that she was able to sit behind a desk and write up sales in January 2002. (R. 323). When she was questioned by her attorney, Mooney testified that of January 2002, she was not able to work full-time. She did not state that she was incapable of working altogether. (R. 325).

## V. CONCLUSION

In reviewing the ALJ's decision,"the scope of [the court's] review is quite limited." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). In the process of reviewing the record for substantial evidence, the court may not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Mindful of the limits imposed by the scope of review, the court finds that the ALJ articulated and documented the basis for the denial of benefits.  Having conducted a careful review of the record, giving particular attention to the hearing transcript, the court finds there is substantial evidence to support the ALJ's decision. Accordingly, it is recommended that the Commissioner's Motion for Summary Judgment (Doc. 11) be granted,

and that the claimant's Motion for Summary Judgment (Doc. 9) be denied.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 1, 2006.  Responses to objections are due by March 13, 2006.


February 13, 2006


/S/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc:

John G. Burt, Esq.
Suite 810 Arrott Bldg.
401 Wood St.
Pittsburgh, PA 15222


Paul E. Skirtich, Esq.
Office of the U.S. Attorney
for the Western District of PA
700 Grant Street, Suite 400
Pittsburgh, PA 15219